# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

GERRI ANN TOTH, JR.

    Plaintiff,

v.                                       Case No. 2:17-cv-66-JVB-PRC

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security Administration,

    Defendant.

## OPINION AND ORDER

Plaintiff Geri Ann Toth Jr.[1] seeks judicial review of the Social Security Commissioner's decision denying her disability benefits, and asks this Court to remand the case. For the reasons below, this Court remands the ALJ's decision.

**A.**     **Overview of the Case**

Plaintiff alleges that she became disabled on August 8, 2007. (R. at 233.) Plaintiff previously worked as an order processor, but has not worked full-time since 2007. (R. at 57–59.) She continued to work for the next few years, but this work did not constitute substantial gainful activity. (R. at 22.) The Administrative Law Judge ("ALJ") found that Plaintiff suffered from severe physical and mental impairments. (R. at 23.) However, the ALJ concluded that she had the Residual Functional Capacity ("RFC") to perform other jobs that existed in significant numbers. (R. at 28.) Therefore, the ALJ denied her benefits. (R. at 29.) This decision became final when the Appeals Council denied Plaintiff's request for review. (R. at 1.) Plaintiff's date

---

[1]     While her name was spelled as "Gerri" in the caption of her appeal, Plaintiff states that "Geri" is the correct spelling of her name. (R. at 341.)

last insured ("DLI") is June 30, 2014. (R. at 242.)

### B. Standard of Review

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### C. Disability Standard

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**D. Analysis**

Plaintiff argues that the ALJ erred in finding that she was not disabled. Specifically, Plaintiff argues that the ALJ mishandled Plaintiff's mental impairments, improperly rejected medical opinions, and improperly dismissed Plaintiff's allegations of disabling pain.

**(1) The ALJ Improperly Dismissed Plaintiff's Obsessive Compulsive Disorder**

Plaintiff alleged disability due, in part, to obsessive compulsive disorder ("OCD"). (R. at 112.) At least three doctors diagnosed her with OCD. (R. at 572, 731, 738.) Even the Agency examiner found that she had "severe OCD with ritualistic behavior" and conceded that her "allegations appear credible." (R. at 121.) In fact, Plaintiff's function report included a twelve-page addendum detailing her struggles with OCD. (R. at 303–23.) The ALJ dismissed these as mere "assertions," but, in doing so, she relied on phantom inconsistencies and prohibited logic. She also failed to explain why every mental-health expert who diagnosed Plaintiff with OCD was wrong. *Cf. Davis v. Astrue*, 2012 U.S. Dist. LEXIS 38748, *60 (N.D. Ill. Mar. 21, 2012) ("[E]very mental health expert that provided an opinion . . . found that Plaintiff had some kind of mental health impairment."). Simply put, the ALJ failed to build an accurate and logical bridge in a manner that the Seventh Circuit requires.

(a) *The ALJ's Alleged Inconsistencies Do Not Exist*

Plaintiff claimed that she would not eat with her hands unless she had just taken a bath and would only use utensils that are "fresh from the dish drainer." (R. at 318.) The ALJ, observing her healthy appearance, concluded that she could "successfully eat within her restrictions." (R. at 28.) A better question would be whether she could do so while working a full-time job. After all, when Plaintiff spent time in the hospital caring for her mother, she

stopped bathing frequently and began losing weight due to a decreased appetite. (R. at 1096.) She told Dr. Dieckmann, one of her therapists, that she had difficulty eating because she was "not sure if [she was] clean enough." (R. at 1091.) Plaintiff also testified that she had an extensive bathing ritual that she must follow. (R. at 92–93.) Her attorney asked her how long this ritual takes, but the ALJ did not allow her to answer. (R. at 93.) If Plaintiff must bathe before eating, then this information is important, because the Vocational Expert ("VE") testified that an employer would not allow her to spend more than 10% of the work day cleaning herself. (R. at 108.)

The ALJ tried to discount the bathing ritual itself by noting that she did not bathe before the hearing, which according to the ALJ, "contradicts her statements that she has a cleaning ritual which she must adhere to." (R. at 28.) But Plaintiff never claimed that she must bathe immediately after waking up, or at a specific time. Rather, Plaintiff claimed to require baths after mundane events, not before them. On remand, if the ALJ wishes to discount Plaintiff's OCD, she must first gain a proper understanding of Plaintiff's issues.

(b)  *The ALJ Ignored Plaintiff's Fear of Cancer*

Even if the ALJ had properly discounted Plaintiff's eating and bathing issues, she failed to even mention Plaintiff's fear of cancer. Plaintiff goes to great lengths to stay cancer-free. In her last full-time job, she "avoid[ed a coworker] as much as possible" after learning that she had cancer. (R. at 66.) She also claimed to have quit jobs in the past to avoid having co-workers who had cancer. (R. at 313.) If, while shopping, she meets someone who had cancer, she will leave without buying anything. (R. at 313.) She once found herself unable to sew because she encountered a cancer survivor and did not want to contaminate her supplies. (R. at 1085.) These are not mere "issues with interacting with others, especially if they are sick." (R. at 23.) If

4

Plaintiff's uncontested testimony is credited, then she cannot interact with cancer survivors. On remand, the ALJ must either properly discount this limitation or present it to the VE.

(c)     *The ALJ Failed to Let Plaintiff Explain Her "Sparse Treatment"*

Next, the ALJ attempted to discount Plaintiff's OCD by attacking her treatment record. She first noted that Plaintiff was never hospitalized for her OCD. (R. at 25.) For starters, the ALJ made no attempt to show that someone with Plaintiff's symptoms would have to be hospitalized. *Tincher v. Colvin*, 2015 U.S. Dist. LEXIS 90961, *11 (N.D. Ill. Jul. 14, 2015). This amounts to a "medical conjecture" that the ALJ is "not competent to make." *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015). *See also Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("Concluding that the claimant 'is not a raving maniac who needs to be locked up' is a far cry from concluding that she suffers no limits on her ability to function").

The ALJ also criticized Plaintiff for failing to seek treatment early on, noting that the record prior to 2012 was "extremely sparse." (R. at 25.) But an ALJ cannot hold a plaintiff's lack of treatment against her without determining whether she had a good reason to skip treatment. *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015); S.S.R. 96-7p ("the adjudicator must . . . consider[] . . . information in the case record, that may explain . . . failure to seek medical treatment"). Plaintiff told a therapist that she "needed someone other than family to talk to," implying that she tried to deal with her issues on her own. (R. at 563.) She also testified, "I know I have a lot of problems, okay? But I'm a strong person. I don't talk about this OCD Stuff. I'm just starting to talk about it with . . . my therapist. It seems weak to me." (R. at 86.) It seems that Plaintiff did not want to admit defeat. The ALJ cannot fault her for lack of treatment without explanation. *Hill*, 807 F.3d at 862. *See also Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.

1989) ("it

\is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation"). If the ALJ believes that Plaintiff's lack of treatment is relevant, then she must give Plaintiff a chance to explain herself.

**(2)   The ALJ Improperly Discounted Dr. Varghese's Opinion**

Dr. Varghese, Plaintiff's psychiatrist, submitted an opinion that rated Plaintiff's "ability to make occupational, personal, and social adjustments" as "fair" to "poor/none." (R. at 1139.) The ALJ rejected this opinion entirely. (R. at 27.) Although an ALJ need only "minimally articulate" her reasons for discounting a medical opinion, *Elder v. Astrue*, 529 F.3d 408, 416 (7th Cir. 2008), she must provide "specific, legitimate reasons constituting good cause" before rejecting it. *Knight v. Chater,* 55 F.3d 309, 313 (7th Cir. 1995). Here, the ALJ failed to do so.

The ALJ noted that Plaintiff skipped her medical appointments to take care of her sick mother. (R. at 27.) Apparently, this shows that Dr. Varghese's opinion "is inconsistent with [Plaintiff's] actual functioning." *Id*. If so, the ALJ failed to minimally articulate how. Next, the ALJ pointed out that Plaintiff "has been on the same [OCD medication] since at least November 2012, with no adjustments in dosing or changes to indicate that they are not effective in controlling her symptoms." *Id.* But this ignores Plaintiff's statements to Dr. Varghese that she doubled her dosage of Prozac since her mother returned to the hospital. (R. at 1133.) The ALJ also cited Plaintiff's Mini Mental score of 30/30. (R. at 27.) Had Plaintiff alleged dementia, this score would have been relevant, but the ALJ failed to explain what a cognitive-impairment test says about Plaintiff's OCD. Lenore Kurlowicz & Meredith Wallace, *The Mini Mental State*

6

*Examination (MMSE)*, https://www.mountsinai.on.ca/care/psych/on-call-resources/on-call-resources/mmse.pdf (last visited July 25, 2018); *see also Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982) ("[an ALJ] should avoid commenting on the meaning of a test . . . when there has been no supporting expert testimony").

Additionally, the ALJ noted that Dr. Varghese's opinion was based on Plaintiff's "self-report of depression, anxiety, and symptoms of OCD and not objective clinical findings, diagnoses, or observations." (R. at 27.) This logic holds water, because an opinion based solely on a plaintiff's "subjective complaints" has no value. *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). The doctor indeed stated that the basis for the assessment was Plaintiff's subjective reports, but he also indicated that his opinion was "consistent with [his] clinical notes, test results and experience with the patient in the office/hospital visits," suggesting that he corroborated Plaintiff's self-report with objective clinical findings, diagnoses, and observations. (R. at 1140.) *See also Farrell v. Astrue,* 692 F.3d 767, 773 (7th Cir. 2012) ("a careful examination of the record that Dr. Beyer furnished shows exactly the kind of supporting evidence the ALJ apparently wanted"). The ALJ must address this on remand and reweigh the opinion if need be.

**(3)     The ALJ Improperly Discounted Dr. Dieckmann's Opinion**

Dr. Dieckmann also submitted an opinion in which he rated Plaintiff's ability to "relate predictably in social situations" as "poor/none." (R. at 850.) The ALJ seems to have forgotten to state what weight she gave the opinion, but she did not appear to think highly of it, because she pointed out that Plaintiff's allegations of social limitations are not supported because no doctor noted "odd behaviors at the time of her evaluation." (R. at 27.) To support this claim, the ALJ cited one instance of Dr. Reich, a rheumatologist, noting Plaintiff's "normal affect and mood." (R. at 895.) This analysis raises far too many unanswered questions.

First, Dr. Reich is not a mental-health expert. *See Worzalla v. Barnhart*, 311 F. Supp. 2d 782, 799 (E.D. Wisc. 2004) (doctors were seeing the plaintiff for physical ailments, and there was no reason to expect them to diagnose depression). Second, Plaintiff's "odd behaviors" must be triggered, so unless the doctor offered her a sandwich or mentioned that he beat cancer, then he would not have noticed Plaintiff's abnormalities. Third, even if he asked about her OCD, he likely would have learned nothing: Plaintiff stated, "I try to hide my problems so I seem normal." (R. at 310.) Fourth, even if Plaintiff opened up to Dr. Reich, he could do nothing more than tell her to follow up with her psychiatrist—which is exactly what he did. (R. at 897) ("OCD/continue followup with psychiatry").

Elsewhere, in an effort to discount Plaintiff's social limitations, the ALJ mentioned that Plaintiff interacts with her mother, brother, sister, and niece. (R. at 23–24.) But an inner circle consisting solely of a few family members actually suggests social limitations. *Meuser v. Colvin*, 838 F.3d 905, 913 (7th Cir. 2016). The record also contains plenty of ignored evidence of Plaintiff's reclusiveness. She told a therapist that she "has no friends." (R. at 953.) She was once tasked with having "one social activity . . . with a friend of her choice" but she apparently failed this objective, stating, "I doubt if I will do this one." (R. at 1003.) She told Dr. Dieckmann that she "has no contact with others outside the home." (R. at 1075.) And although Plaintiff admitted to having friends on Facebook, she testified that she does not see them in person. (R. at 74–75.)

Lastly, the ALJ noted that Dr. Dieckmann himself stated Plaintiff's "symptoms are currently managed with psychotropic medications and individual therapy." (R. at 27.) But he also said that Plaintiff's fears "remain active and limiting" and that her "delusional thinking" would likely result in "debilitating panic." (R. at 853.) *See also Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1030 ("One can be stable and yet disabled"). Coincidentally, Plaintiff indicated that,

without baths, she "will have severe dibilitating [sic] panic attacks." (R. at 314.) She also told Dr. Dieckmann about a panic attack "that neither the relaxation nor her medication" could resolve. (R. at 1099.) The ALJ must address this on remand.

**(4)     The ALJ Improperly Discounted Plaintiff's Fibromyalgia**

In addition to her mental impairments, Plaintiff claimed disability due to fibromyalgia. (R. at 112.) She also alleged that her fibromyalgia causes three bad days a week where she is essentially bedridden. (R. at 84.) The ALJ's accepted that Plaintiff has fibromyalgia (R. at 23.), but didn't properly consider whether it limits Plaintiff's daily activities. For example, the ALJ relied on Plaintiff's strength exams to discount her claims of fibromyalgia as if fibromyalgia is a condition that causes limitations on strength and motion. While the record contains evidence that Plaintiff's fibromyalgia is controlled, the strength limitations are not the basis for such conclusion, and the ALJ should readdress this claim.

**E.     Conclusion**

Based on a misunderstanding of Plaintiff's mental issues, the ALJ improperly dismissed Plaintiff's OCD allegations and rejected medical opinions. Additionally, the ALJ's incomplete analysis of Plaintiff's fibromyalgia failed to justify discounting her pain allegations. Accordingly, this Court remands the ALJ's decision.

SO ORDERED on August 10, 2018

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE